**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**

**TREON D. PATRICK,**

      **Petitioner,**

**vs.**

                               **CASE NO. 4:06cv543-SPM/WCS**

**JAMES McDONOUGH,**

      **Respondent.**

_____/

**REPORT AND RECOMMENDATION**

      This is a petition for writ of habeas corpus filed by Treon D. Patrick pursuant to

28 U.S.C. § 2254.  Doc. 1.  The petition was presented for mailing on November 28,

2006, and is deemed to have been filed on that date pursuant to the "mail box" rule.[1]

*Id.*, p. 10.  Petitioner challenges his convictions for sexual battery in the Circuit Court of

the Second Judicial Circuit, in and for Leon County, Florida, case number 01-0007-CFA.

As noted in several of my orders, there have been concerns as to whether this petition

was timely filed.  Docs. 6, 8, 10.

---

      [1] Adams v. United States, 173 F.3d 1339, 1341 (11th Cir. 1999); Houston v.
Lack, 487 U.S. 266, 275, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988).

Respondent has now moved to dismiss the petition as untimely filed.  Doc. 13.

Petitioner was provided an opportunity to file a traverse by August 6, 2007, docs. 10

and 12, but has not filed anything further.

**Procedural history**

There is a one year limitations period for filing a § 2254 petition, which generally

"shall run" from "the date on which the judgment became final by the conclusion of

direct review or the expiration of time for seeking such review."  § 2244(d)(1)(A).[2]

Petitioner was sentenced to 15 years imprisonment followed by 10 years probation after

his no contest plea to two counts of sexual battery.  The judgment was entered on June

11, 2001.  Doc. 1, p. 1; doc. 13, Ex. A (docket sheet).[3]  Petitioner did not appeal.

Consequently, his conviction became final on July 11, 2001, when the time for filing a

direct appeal expired, that is, 30 days after the rendition of a written order imposing

sentence.  *See* FLA. R. APP. P. 9.140(b)(3)).  This calculation does not include the first

day (June 11, 2001) but does include the 30th day (July 11, 2001), which is the way the

Florida courts count the 30 day period.  *E.g.*, McGee v. State, 947 So. 2d 681, 682 (Fla.

2d DCA 2007).

---

[2] The limitations period runs from the latest of the following:  the date on which
the judgement became final; the date on which an unconstitutional impediment which
prevented the applicant from filing is removed; the date on which the right asserted was
recognized by the Supreme Court and made retroactive on collateral review; or the date
on which the factual predicate for the claim could have been discovered by due
diligence.  § 2244(d)(1)(A)-(D).  None of these later dates apply here on the facts
presented.

[3] The Exhibits referenced here are those filed in paper form as attachments to
the response.  *See* doc. 13, pp. 18-19 (index of paper exhibits).

As noted above, the AEDPA one year limitations period "runs" from the date that the conviction is final when the time for seeking review expired, on July 11, 2001.  A number of courts of appeal have applied the method for counting time provided in FED. R. CIV. P.6(a), which does not count the "day of the act, event, or default from which the designated period of time begins to run . . . ."  Bronaugh v. Ohio, 235 F.3d 280, 284-285 (6th Cir. 2000) (citing cases from First, Second, Fourth, Fifth, Seventh, and Eighth Circuits applying Rule 6(a) to the § 2244(d) one year period).  These are persuasive cases and adopted here.  Thus, in this case the first day of the AEDPA one year period was July 12, 2001.

"The time during which a *properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim* is *pending* shall not be counted toward any period of limitation under this subsection."  § 2244(d)(2) (emphasis added).  Tolling counts the days that a tolling proceeding is pending, and the AEDPA period is suspended on those days.  Petitioner properly filed a FLA. R. CRIM. P. Rule 3.850 motion on September 26, 2001.  Ex. A.  Respondent agrees that the AEDPA period was again tolled while this 3.850 motion was pending, and it was first pending on September 26, 2001.  Day v. Crosby, 391 F.3d 1192, 1192-93 (11th Cir. 2004), *citing* Nyland v. Moore, 216 F.3d 1264, 1267 (11th Cir. 2000).  September 26, 2001, was a day of tolling.  The AEDPA period, therefore, ran untolled from July 12, 2001, to September 25, 2001, a period of 76 days.[4]

---

[4] This is a correction from my prior order.  The untolled period was 76 days, not 77 days.

As will be explained in more detail ahead, the Rule 3.850 motion was denied after an evidentiary hearing, Petitioner appealed, the appeal was denied on the merits, and the mandate was issued on August 2, 2004.[5]  Doc. 1, p. 3; Ex. A.  Tolling, therefore, lasted until the mandate issued, and ended on August 2, 2004.  Day v. Crosby, 391 F.3d 1192, 1192-1193 (11th Cir. 2004).  The AEDPA period began to run again on August 3, 2004, and expired 289 days later, on May 19, 2005, unless another tolling event occurred in the interim.[6]

On March 27, 2005,[7] Petitioner filed a motion for a "belated" appeal from the order denying his Rule 3.850 motion.  Ex. L.  The motion was filed pursuant to FLA. R. APP. P. 9.141(c).  Id.  That Florida rule generally permits a motion for a belated appeal to be filed within two years after the expiration of the time for filing a notice of appeal from a final order denying a Rule 3.850 motion.  FLA. R. APP. P. 9.141(c)(4).

Petitioner alleged in this motion that a notice of appeal from the denial of his Rule 3.850 motion was filed on June 8, 2003, by his attorney, David Collins.  Ex. L. Petitioner alleged that he called Mr. Collins on October 8, 2004, and was told that Collins was not

---

[5] The path to finality with respect to the Rule 3.850 proceeding was a bit longer than this, but the AEDPA tolling was continuous.  In Patrick v. State, 830 So.2d 248 (Fla. 1st DCA 2002), the denial of Rule 3.850 relief was reversed in part and otherwise remanded for an evidentiary hearing.  Collins represented Petitioner in the appeal from the second denial of his Rule 3.850 motion.

[6] The year of 2005 had 365 days.  It was not a leap year, and February had 28 days.

[7] Again, the mail box rule is used for the date of filing.  Ex. L.  It will be assumed that the mail box rule applies even though March 27, 2005, was a Sunday.

handling his appeal.  *Id.*  He alleged that on August 3, 2004, his appeal was dismissed

"for lack of prosecution."  *Id.*  The motion sought reinstatement of this appeal.  *Id.*

The motion for a belated appeal was given appellate case number 1DO05-1451

by the First District Court of Appeal.  Ex. M.  The motion was initially denied because

the court found it to be "facially insufficient in that the oath has not been signed by

petitioner."  *Id.*  The First District Court of Appeal further ordered:

> In accordance with Florida Rule of Appellate Procedure 9.141(c)(5)(B),
> petitioner shall file and serve an amended petition within 20 days of the
> date of this order with a properly executed oath.  Failure to timely comply
> with this order may result in dismissal of this cause without further
> opportunity to be heard.  Fla. R. App. P. 9.410.

*Id.*  That order was entered on April 7, 2005.  Petitioner refiled his motion under oath on

April 24, 2005 (date stamp showing the document was submitted for mailing to prison

officials on that date).  Ex. N.  The amended motion was "denied on the merits" on May

23, 2005, by the First District Court of Appeal.  Ex. O.  Petitioner moved for rehearing.

Ex. P.  Rehearing was denied on June 29, 2006.  Ex. Q.

The allegations of fact in Petitioner's motion for a belated appeal were untrue.

An appeal from denial of Rule 3.850 relief after an evidentiary hearing was filed on July

7, 2003, by Collins.  Ex. G.  Collins filed an initial brief on the merits in December, 2003.

Ex. H.  The appeal was given case number 1DO3-4319 by the First District Court of

Appeal, a case number different from the number given to the motion for a belated

appeal.  *Id.*  The State filed a brief on the merits.  Ex. I.  The trial court's denial of 3.850

relief was affirmed *per curiam* on July 15, 2004.  Ex. J; *see* Patrick v. State, 877 So.2d

726 (Table) (Fla. 1st DCA 2004).  The mandate from this decision was issued by the

appellate court on August 2, 2004, received by the trial court on August 3, 2004.  Exs. K

and A.  Petitioner's was apparently unaware that his appeal from denial of his Rule 3.850 motion had run its course when he filed his motion for a belated appeal.

**Whether Petitioner's motion for a belated appeal tolls the AEDPA period**

As will be discussed ahead, if the motion for a belated appeal tolled the AEDPA period from March 27, 2005, this § 2254 petition was timely filed.  Respondent argues that this motion for a belated appeal was not "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim" as required by § 2244(d)(2) to toll the AEDPA limitations period.  The argument is that the motion did not directly attack the criminal judgment and hence was not a §2244(d)(2) tolling event.  This presents a difficult legal issue.

In Miller v. Crosby, 180 Fed.Appx. 126 (11th Cir. 2006), *cert. denied*, 127 S.Ct. 969 (2007), decided in May, 2006, the court said:  "We have not addressed whether a motion seeking a [Florida] belated appeal tolls an unexpired AEDPA period."  180 Fed.Appx. at 128.  Miller observed that this question was not decided in Moore v. Crosby, 321 F.3d 1377 (11th Cir. 2003).  *Id.*  Miller did not decide the question either. The court there found that even if the motion for a belated appeal tolled the unexpired AEDPA limitations period,[8] the period still expired thereafter, before the § 2254 petition was filed.  180 Fed.Appx. at 129.

In Moore, as in Miller, a motion for a belated appeal had been granted, but in Moore, the motion for a belated appeal had been filed *after* the one year period had expired.  At issue in Moore was what to do with the idle period between the finality of

_____

[8] The motion for a belated appeal had been filed before the AEDPA period had expired.

the trial court's judgment and the date the motion for a belated appeal had been filed.

In the normal sequence of events, this relatively short and predictable idle period is

tolled.[9]  Miller cited Melancon v. Kaylo, 259 F.3d 401 (5th Cir. 2001) as holding that

"after the appeal period has lapsed, an application for further appellate review ceases to

be 'pending' for purposes of calculating [the] federal habeas corpus tolling provision."

321 F.3d at 1380.  In explaining the ruling of Melancon, the court said:

> Thus, the Fifth Circuit concluded that after the appeal period lapsed, an
> application ceased to be pending, *but that a subsequent properly filed
> application entitled the petitioner to additional tolling beginning at the time
> of the proper filing*.

*Id*. (emphasis added).  Implicit in this is the understanding that a properly filed motion

for a belated appeal is an "application" as defined by § 2244(d)(2) that tolls the AEDPA

period from the date of filing.

As further evidence that this is the Eleventh Circuit's understanding is the holding

in Moore v. Crosby:

> The statutory tolling provision does not encompass a period of time in
> which a state prisoners does not have a "properly filed" post-conviction
> application actually pending in state court.  A state application [the motion
> for a belated appeal] filed after expiration of the limitations period does not
> relate back so as to toll idle periods preceding the filing of the federal
> petition. . . .  *While a "properly filed" application for post-conviction relief
> tolls the statute of limitations*, it does not reset or restart the statute of
> limitations once the limitations period has expired.

321 F.3d at 1381 (emphasis added).  The words emphasized assume that had the

motion for a belated appeal been filed *before* the expiration of the AEDPA period, it

---

[9] Moore cited Carey v. Saffold, 536 U.S. 214, 122 S.Ct. 2134, 153 L.Ed.2d 260
(2002), which held that "a petitioner's claim is 'pending' for the entire term of state court
review, including those intervals between one state court's judgement and the filing of
an appeal with a higher court."  321 F.3d at 1380.

would have been deemed to be a properly filed § 2244(d)(2) "application" that would toll the AEDPA period while pending.

That is also what was understood by the Fifth Circuit in Melancon.  In that case, a prisoner was permitted by Louisiana law to seek review of a lower court ruling by filing an original application for a supervisory writ.  259 F.3d at 404.  The usual period for seeking such a writ was 30 days from the date of the ruling at issue,[10] but this prisoner waited six months to file his application.  Id.  The court first determined that the application had been "properly filed," even though late on its face, because the appellate court considered the application on the merits.[11]  Id., at 405.  It is noteworthy here that the prisoner's request for permission to take an appeal, an *original proceeding*, was deemed to be an "application for State post-conviction or other collateral review with respect to the pertinent judgment or claim" as those words are used in § 2244(d)(2).  The court said that because the application for a supervisory writ

---

[10] As explained in Dixon v. Cain, 316 F.3d 553 (5th Cir. 2003), Louisiana does not have a firm period for filing a notice of appeal.  Instead, the trial court must set a reasonable time, "not to exceed thirty days," in which to apply for leave for review in the appellate court.  316 F.3d at 555.  The Louisiana rule also provides that the trial court may extend this time if there is a motion filed within the original return date or any extended date.  Id.  Dixon said that in Melancon, there had been no compliance with these deadlines, so the idle time, before the application was filed, did not toll the AEDPA.  Id.  In contrast, in Dixon, the application for appellate review had been filed within the times specified by the rules and therefore the idle time was tolling time.  316 F.3d at 556.

[11] This assumption has now been called into question by the Supreme Court in two cases.  Evans v. Chavis, 546 U.S. 189, 197, 126 S.Ct. 846, 852, 163 L.Ed.2d 684 (2006) (an "order denying a petition 'on the merits' does not *automatically* indicate that the petition was timely filed," citing Carey v. Saffold, 536 U.S. 214, 122 S.Ct. 2134, 153 L.Ed.2d 260 (2002)).

(permission to appeal) was "properly filed," it "tolled the limitations period" from the date of filing. *Id.*

This was not enough, however.  To save the § 2254 petition, there had to have been tolling during the idle time, from the date of the trial court's final judgment until the date the application for a supervisory writ was filed (an issue not relevant to the case at bar).  259 F.3d at 406 (stating "Melancon also requires tolling of the six months that passed between the trial court's disposition of the case and Melancon's May 8, 1998, application to the Court of Appeal").  The court answered this question in the negative since the normal period for seeking an appeal had expired.  The court noted that the Seventh and Tenth Circuits had held that "an application ceases to be 'pending' after the statutory period to appeal expired and that tolling can begin again *when the application is properly filed.*"  *Id.* (emphasis added), citing Fernandez v. Sternes, 227 F.3d 977 (7th Cir. 2000) and Gibson v. Klinger, 232 F.3d 799 (10th Cir. 2000).  The court made clear, however, that though the idle period would not be tolled, "a subsequent properly filed application entitles the petitioner to additional tolling beginning at the time of the 'proper' filing."  *Id.*, at 407.  It concluded that the "properly filed" application for a supervisory writ "simply tolled all subsequent proceedings relating to that application."  *Id.*

Six months after Miller said that the Eleventh Circuit had not yet decided whether a motion for a belated appeal is a tolling event, the Eleventh Circuit was again presented with that question.  Williams v. Crist, No. 05-15482, 2006 WL 4476201 (11th Cir., Dec. 5, 2006) (not selected for publication).  The court answered the question in the affirmative, taking care to limit the ruling to the facts.  There, an appeal from denial

of the petitioner's Rule 3.850 motion was due on March 19, 1999.  *Id.*, at *1.  On March

22, 1999, petitioner's lawyer filed a notice of appeal.  *Id.*  The appeal was docketed and

assigned a case number.  *Id.*  On April 10, 1999, the attorney filed a motion for a

belated appeal in the same case (in response to a show cause order regarding

timeliness), admitting that he had miscalculated the time.  *Id.*  This motion was filed

before the expiration of the AEDPA period.  About eighteen months later, the Florida

Supreme Court granted the belated appeal, quashing the lower court's denial of the

motion.  The Florida Supreme Court held that for future cases, the proper way to seek a

belated appeal due to ineffectiveness of counsel causing an untimely notice of appeal

would be by petition for writ of habeas corpus.  *Id.*, at *2, citing Williams v. State, 777

So. 2d 947, 950 (Fla. 2000).  The belated appeal then commenced.  *Id.*

     The district court in Williams determined that the tolling of the AEDPA period

ceased on March 19, 1999, the last day for filing a notice of appeal from the denial of

the Rule 3.850 motion, concluding that the March 22, 1999, notice of appeal was not

properly filed because it was untimely, and that the April 10, 1999, motion for a belated

appeal had no effect upon the running of the AEDPA period.  *Id.*, at *3.  The Eleventh

Circuit reversed.  The court reasoned:

> Since there was time left on his AEDPA clock, his belated appeal in his
> 3.850 proceeding had the potential to toll that clock.  We say "potential"
> because much depends on how the Florida courts treated Williams's
> motion for belated appeal.

*Id.*, at *6.  The court noted that the motion for a belated appeal was ultimately granted,

thus recognizing that it had been properly filed under Florida law.  *Id.*, at *7.  The court

also found it important that the properly filed motion was "continuously pending" during

the period to be tolled. *Id*. The court reasoned that "[a]llowing Williams to pursue a

belated 3.850 appeal within the one-year time period serves the exhaustion requirement

in AEDPA." *Id*. While the State had argued that a motion for a belated appeal is not an

"application for post-conviction relief for purposes of § 2244(d)(2)," the court said it did

not have to decide that issue because the motion in the case had been filed in the

pending Rule 3.850 appeal, using the same case number, and was not a separate

proceeding. Thus, it was "part of his 3.850 appeal." *Id*. The court cautioned that its

holding was limited:

> After Williams's case, Florida Rule of Appellate Procedure 9.141,
> expressly entitled "Review Proceedings in Collateral or Post-Conviction
> Criminal Cases," provides for motions for belated appeals in 3.850
> proceedings. Specifically, appellate Rule 9.141(c), entitled "Petitions
> Seeking Belated Appeal or Alleging Ineffective Assistance of Appellate
> Counsel," provides, in relevant part, that petitions seeking belated appeal
> shall be filed in the appellate court to which the appeal was or should have
> been taken and that such petitions "shall be treated as original
> proceedings under rule 9.100, except as modified by this rule." Fla. R.App.
> P. 9.141(c)(1) and (2).

> Williams's belated appeal motion, however, took place before this rule was
> enacted, and the Florida DCA did not treat Williams's belated appeal
> motion as an original proceeding in the appellate court. *Instead, the
> Florida DCA treated Williams's belated appeal motion as a motion in his
> already pending Appeal No. 99-01282, which challenged his conviction.
> Thus, our holding in this case is strictly limited to what happened in
> Williams's case. We have no occasion to address whether statutory tolling
> under § 2244(d)(2) may occur when Rule 9.141 motions are filed within an
> unexpired AEDPA limitations period or whether Rule 9.141 motions qualify
> as applications for state post-conviction relief under § 2244(d)(2).*
> Compare *Ford v. Moore*, 296 F.3d 1035 (11th Cir. 2002), with *Howell v.
> Crosby*, 415 F.3d 1250, 1251 (11th Cir. 2005), and *Bridges v. Johnson*,
> 284 F.3d 1201, 1203 (11th Cir. 2002).

*Id.*, at *7, n.8 (emphasis added).

The first case cited in this footnote, Ford v. Moore, 296 F.3d 1035 (11th Cir. 2002), held that a Florida Rule 3.800 motion, claiming that a state sentence violated state law rather than federal law, was, nonetheless, an AEDPA tolling event.  It found that such a motion was an "application for . . . collateral review with respect to the pertinent judgment . . ." as intended by § 2244(d)(2).

In the second case, Howell v. Crosby, 415 F.3d 1250 (11th Cir. 2005), *cert. denied*, 546 U.S. 1108 (2006), it was not disputed that a motion for an extension of time to *initiate* a Rule 3.850 motion is not an "application for . . . collateral review with respect to the pertinent judgment . . ." as intended by § 2244(d)(2) (citing State v. Boyd, 846 So. 2d 458, 459-460 (Fla. 2003) (distinguishing motions for extensions of time, under Fla. R. Crim. P. 3.050, and those for post conviction relief, under Fla. R. Crim. P. 3.850)). Since the issue was not disputed, the court did not decide it.

In Boyd, before the Florida Rule 3.850 limitations period (two years) had expired, the prisoner moved for an extension of time pursuant to Rule 3.050 to *initiate* his Rule 3.850 motion.  The Florida Supreme Court remanded to the trial court to consider the motion, thus at least affirming the proposition that such a motion is a proper procedure connected with the litigation of a Rule 3.850 motion.

In the third case, Bridges v. Johnson, 284 F.3d 1201 (11th Cir. 2002), the court held that an application to the Georgia sentence review panel is not an application for collateral review with respect to the judgment and thus is not a tolling event.  This is so because the sentence review panel's role is simply to review a sentence to see if it is excessively harsh.  The panel had no authority to determine the legality of the judgment and sentence.  284 F.3d at 1203-1204.

Respondent has cited several cases in support of its argument here, and these also should be discussed at length.  In <u>Cole v. Crosby</u>, No. 505CV2220C10GRJ, 2006 WL 1169536 (M.D. Fla., May 3, 2006), the issue was whether a motion for DNA evidence was a § 2244(d)(2) "application."  Judge Hodges held that it was not.  He reasoned:

> [M]otions that seek to develop or acquire the means to mount a challenge to the conviction do not interrupt the running of AEDPA's period of limitations.  An application for DNA testing falls squarely within that category of preliminary proceedings and cannot be distinguished on any principled or reasoned basis.

*Id.*, at *4.  This conclusion is consistent with the *dicta* in <u>Howell v. Crosby</u>, that litigation that precedes the initiation of a Rule 3.850 motion is not an "application" as meant by § 2244(d)(2).  <u>Cole</u> is not directly applicable in the case at bar because Petitioner was not pursuing a remedy before initiating a 3.850 proceeding.  Instead, he was seeking to continue a Rule 3.850 proceeding by taking an appeal.

Respondent relies upon <u>Adeline v. Stinson</u>, 206 F.3d 249 (2nd Cir. 2000), which is likewise distinguishable.  There, the prisoner filed two motions in the appellate court seeking permission to revive an appeal that had been denied years before.  The court found that the motion was not a "recognized application for state post-conviction relief.  Nothing in New York law appears to permit such a motion to be used for that purpose."  206 F.3d at 252.  Hence, the motion did not toll the AEDPA period.  Here, in contrast, Petitioner used a procedure for a belated appeal that is well-recognized under Florida law.

Respondent also relies upon <u>Tinker v. Hanks</u>, 172 F.3d 990 (7th Cir. 1999), *reinstated by*, 255 F.3d 444 (2001).  In that case, the court held that a state motion for

permission to file a second post conviction motion does not toll the AEDPA period because it was not a "properly filed application" as intended by § 2244(d)(2).  In Florida, a second Rule 3.850 motion *does* toll the AEDPA period and does not require permission of the court to be filed.  Bond v. Moore, 309 F.3d 770, 771 n.1 (11th Cir. 2002).  In the first round of Tinker, the court reasoned:  "Congress could not have intended that the time for filing the federal action be tolled indefinitely by the simple expedient of filing repeated applications for leave to file state post conviction proceedings."  Tinker v. Hanks, 172 F.3d at 991.  In the order reinstating the former opinion after Artuz v. Bennett, 531 U.S. 4, 121 S.Ct. 361, 148 L.Ed.2d 213 (2000). 531 U.S. 4, 121 S.Ct. 476, 148 L.Ed.2d 450 (2000), the court determined that a successful motion for leave to file was a "filing precondition," that is, a precondition to being able initiate a second post conviction motion.  255 F.3d at 446.  The implication was, therefore, that although there was no second post conviction motion "pending," any such motion could not be "properly" filed because the motion for permission to file a second post conviction motion had been denied.  Again, this is consistent with the *dicta* in Howell v. Crosby and Judge Hodges's reasoning in Cole v. Crosby.  Motions and petitions filed *before* the initiation of a post conviction motion are sufficiently distinct from the post conviction motion itself such that the pendency of the preliminary motion cannot be considered to be a "pending" "application" under § 2244(d)(2).

Other cases cited by Respondent are not sufficiently analogous to be helpful. Bridges v. Johnson is distinguished because the sentence review panel there had no authority to determine the legality of the criminal judgment.  Here, in contrast, the

appellate court had authority to review the merits of the Rule 3.850 appeal had the court granted a belated appeal.

The last case cited by Respondent is Moore v. Cain, 298 F.3d 361 (5th Cir. 2002), *cert. denied*, 537 U.S. 1236 (2003).  At issue was whether a petition for a writ of mandamus in the state appellate court, seeking an order directing the trial court to rule upon a terminated post conviction motion,[12] was an "application" as intended by § 2244(d)(2).  The court simply looked at the relief sought by the petitioner.  Since the petition did not challenge the judgment upon which the petitioner was incarcerated, it was not an "application for State post-conviction or other collateral review with respect to the pertinent judgment or claim" as required by § 2244(d)(2) to toll the AEDPA limitations period.  298 F.3d at 367.

Since Petitioner's motion for a belated appeal is the case contemplated in footnote 8 of Williams v. Crist, this court must decide the question not decided in Moore, Miller, and Williams v. Crist.  In particular, the court must determine whether the distinction in footnote 8 of Williams v. Crist provides a basis for a different result in this case.

Carey v. Saffold, 536 U.S. 214, 122 S.Ct. 2134, 153 L.Ed.2d 260 (2002) construed the word "pending" in § 2244(d)(2), and that analysis is of some help here in determining this issue:

> The dictionary defines "pending" (when used as an adjective) as "in continuance" or "not yet decided."  WEBSTER'S THIRD NEW INTERNATIONAL

---

[12] The 1994 post conviction motion in that case had been denied as improperly filed.  The prisoner sought mandamus in the appellate court to try to force the trial court to revisit the 1994 motion.

DICTIONARY 1669 (1993).  It similarly defines the term (when used as a preposition) as "through the period of continuance . . . of," "until the . . . completion of."  *Ibid*.  That definition, applied in the present context, means that an application is pending as long as the *ordinary* state collateral  review process is "in continuance" – i.e., "until the completion of" that process.  In other words, until the application has achieved final resolution through the State's post-conviction procedures, by definition it remains "pending."

536 U.S. at 220, 122 S.Ct. at 2138 (emphasis added).

The Court's use of the phrase "ordinary state collateral review process" was a product of its review of the other side of this coin, exhaustion of state court remedies:

A federal habeas petitioner must exhaust state remedies before he can obtain federal habeas relief.  The statute makes clear that a federal petitioner has not exhausted those remedies as long as he maintains "the right under the law of the State to raise" in that State, "*by any available procedure, the question presented.*"  28 U.S.C. § 2254(c).  We have interpreted this latter provision to require the federal habeas petitioner to "invok[e] one complete round of the State's established appellate review process."  *O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999).  The exhaustion requirement serves AEDPA's goal of promoting "comity, finality, and federalism," *Williams v. Taylor*, 529 U.S. 420, 436, 120 S.Ct. 1479, 146 L.Ed.2d 435 (2000), by giving state courts "the first opportunity to review [the] claim," and to "correct" any "constitutional violation in the first instance."  *Boerckel*, supra, at 844-845, 119 S.Ct. 1728.  And AEDPA's limitations period – with its accompanying tolling provision – ensures the achievement of this goal because it "promotes the exhaustion of state remedies while respecting the interest in the finality of state court judgments."  *Duncan v. Walker*, 533 U.S. 167, 178, 121 S.Ct. 2120, 150 L.Ed.2d 251 (2001).

536 U.S. at 220, 122 S.Ct. at 2138 (emphasis added).

As noted earlier, Petitioner initiated a Rule 3.850 proceeding.  Thus, this case is distinguished from Cole and Howell.

A direct appeal from the denial of a Rule 3.850 motion is certainly an ordinary component of Florida's collateral review process and exhaustion of that appellate remedy has long been required for § 2254 purposes.  Leonard v. Wainwright, 601 F.2d

807, 808 (5th Cir. 1979) (Florida prisoner must appeal denial of Rule 3.850 relief to exhaust state court remedies).

When he filed the motion for a belated appeal from the denial of his Rule 3.850, Petitioner apparently thought that he was seeking to continue that which he had started in the trial court.[13]  Further, Petitioner's motion for a belated appeal from the denial of his Rule 3.850 motion was "ordinary," at least at the moment it was filed, that is, "available" as a part of Florida's collateral review process.  As Williams v. Crist noted, motions for belated appeals are "common collateral proceedings in Florida courts." 2006 WL 4476201, * 2, n.2, and cases cited.[14]

While Petitioner's motion was an original proceeding, with a new appellate case number, it still had only one purpose under Florida law, to pursue an appeal from the denial of the Rule 3.850 motion.  To reach a result different from Williams v. Crist, simply because the motion for a belated appeal had a different case number and followed the new procedure (created by the Florida Supreme Court in Williams's case) would have no principled basis for decision.  It was still a motion for a belated appeal well-recognized under Florida law.

Thus, the court should find that this motion for a belated appeal, filed at a time when Petitioner still had time on his AEDPA one year clock, was a "properly filed"

---

[13] That Petitioner was wrong, that he had already had a direct appeal, and that his motion was without merit, are separate issues that will be addressed ahead.

[14] Indeed, if a Florida prisoner has not appealed the denial of his Rule 3.850 motion, and if he still has time to seek a belated appeal under Florida law, it conceivably could be argued that he still has a state court remedy available that he has not yet exhausted.

"application" as intended by § 2244(d)(2) that tolled the AEDPA time while it was "pending."  Unless another argument presented by Respondent (addressed ahead) is persuasive, this § 2254 petition was timely filed and the motion to dismiss should be denied.

**Whether the motion for a belated appeal tolled the time from March 27, 2005, to April 24, 2005**

Respondent argues that the motion for a belated appeal was not "properly filed" until April 24, 2005, because when it was originally filed, it was not filed under oath. This short period of tolling, from March 27, 2005, to April 24, 2005, matters in this case.

As noted earlier, 76 days elapsed between the finality of the conviction and the filing of the Rule 3.850 motion.  The AEDPA period was tolled while the Rule 3.850 motion was "pending."  That Rule 3.850 proceeding ended on August 2, 2004, and the AEDPA period began to run again on August 3, 2005.  If the motion for a belated appeal did not begin to toll the AEDPA period until April 24, 2005, when Petitioner corrected the initial filing deficiencies, then another 264 days elapsed (August 3, 2004, to April 23, 2005, inclusive), a total of 340 days, leaving 25 days remaining.

April 24, 2005, was a day of tolling and the tolling continued until denial of the motion for a belated appeal was final.  The denial of the motion for a belated appeal was final on June 29, 2005, with the denial of a motion for rehearing.  Ex. Q.  Tolling continued through June 29th, and on June 30, 2005, the AEDPA period again began to run.  It ran until July 25, 2005, because on July 26, 2005, Petitioner filed a motion to

correct sentence pursuant to FLA. R. CRIM. P. 3.800, another possible tolling event.[15]
Ex. Q, R. 1 (date that the motion was submitted for mailing).

Accordingly, the inclusive period from June 30, 2005, through Monday, July 25, 2005, was not tolled, a period of 26 days.  The total elapsed AEDPA time at this point was 366 days (76 plus 264 plus 26 days).  The 365th day, however, was Saturday, July 23, 2005.  Since Saturdays and Sundays are not counted, the AEDPA period expired on Monday, July 25, 2005.  The Rule 3.800 motion, another possible tolling event, was not filed until Tuesday, July 26, 2005.  By that time, the AEDPA period expired and there was nothing left to toll.  As a consequence, assuming no tolling when the motion for a belated appeal was originally filed on March 27, 2005, this § 2254 petition would be untimely.

Artuz v. Bennett, 531 U.S. 4, 121 S.Ct. 361, 148 L.Ed.2d 213 (2000) is the seminal case for determining when a collateral proceeding has been "properly filed." There it was argued that a state collateral challenge had not been "properly filed" as required by § 2244(d)(2) because it was subject to two procedural bars.  One of the bars was that it raised an issue that had previously been determined on the merits upon appeal from the criminal judgment.  531 U.S. at 7, 121 S.Ct. at 363.  The Court refused to find the motion to be not "properly filed," despite the fact that it was subject to defeat as having raised matters already disposed of on appeal.  The Court said:

An application is "filed," as that term is commonly understood, when it is delivered to, and accepted by, the appropriate court officer for placement

---

[15] Respondent assumes that this motion again tolled the AEDPA period, and the court should assume likewise.  Doc. 13, p. 6.  The denial of this motion occurred after Petitioner filed this § 2254 petition, so all of the time from July 26, 2005, was tolled.  Id.

into the official record.  And "[A]n application is "properly filed" when its delivery and acceptance are in compliance with the applicable laws and rules governing filings.  These usually prescribe, for example, the form of the document, the time limits upon its delivery, the court and office in which it must be lodged, and the requisite filing fee.  In some jurisdictions the filing requirements also include, for example, preconditions imposed on particular abusive filers, or on all filers generally.  But in common usage, *the question whether an application has been "properly filed" is quite separate from the question whether the claims contained in the application are meritorious and free of procedural bar.*

531 U.S. at 8-9, 121 S.Ct. at 363-364 (citations and footnote omitted, emphasis added).

When Petitioner here initially filed his motion for a belated appeal, he did not "properly" file it because, as the state appellate court found, it was not under oath.  Had that been the state court's last clear word on the subject, that ruling might have been "the end of the matter."  Pace v. DiGuglielmo, 544 U.S. 408, 414, 125 S.Ct. 1807, 1812, 161 L.Ed.2d 669 (2005), quoting Carey v. Saffold, 536 U.S. at 225.  *Cf.*, Hurley v. Moore, 233 F.3d 1295 (11th Cir. 2000), *cert. denied*, 532 U.S. 1013 (2001), decided ten days after Artuz.  In Hurley, the prisoner's Rule 3.850 motion was dismissed because it was not under oath.  Even though the order of dismissal provided two examples of oaths sufficient to meet the "properly filed" requirement, the prisoner did not correct his error and instead sought rehearing.  The Eleventh Circuit found that his Rule 3.850 motion did not toll the AEDPA time because it was not "properly filed."

In this case, however, when the Florida First District Court of Appeal issued its show cause order granting leave to amend, Petitioner corrected his original error.  The amended motion was a copy of the original with the oath added at the end.  Under Florida law, an amendment that does not change the original claims relates back to the original filing.  FLA. R. CIV. P. 1.190(c) ("When the claim or defense asserted in the

amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment shall relate back to the date of the original pleading."); <u>Bryant v. State</u>, 901 So. 2d 810, 818 (Fla. 2005) ("Had the circuit court stricken the [Rule 3.851] motion with leave to amend, the amended motion Bryant filed in March 2003 would have been timely because it would have related back to the original filing," quoting Rule 1.190(c)); <u>Schwenn v. State</u>, 958 So. 2d 531, 532 (Fla. 4th DCA 2007) (Rule 3.850 motion, explaining that an amended motion would relate back, citing <u>Bryant</u>).  <em>See also</em>, <u>Mederos v. United States</u>, 218 F.3d 1252, 1253-1254 (11th Cir. 2000) (district court erred by not finding that a second § 2255 motion, identical to the first except that it corrected the lack of a signature under penalty of perjury, related back to the date of filing of the first § 2255 motion; the court relied upon F<small>ED</small>. R. C<small>IV</small>. P. 15(c)(2), providing relation back much the same as the Florida rule).  Since Petitioner amended his motion and corrected the problem, Petitioner is entitled to AEDPA tolling from March 27, 2005, when he originally filed the motion without an oath.  Thus, his § 2254 petition was timely filed.

**Whether the motion for a belated appeal was improperly filed because it was based upon the false premise that Petitioner had not had an appeal from denial of his Rule 3.850 motion**

Respondent's third argument for dismissal of this § 2254 motion is that the motion for a belated appeal was without merit.  Indeed, the First District Court of Appeal probably so found, denying the motion on the merits.

This argument was plainly foreclosed by <u>Artuz</u>.  "[T]he question whether an application has been 'properly filed' is quite separate from the question whether the claims contained in the application are meritorious and free of procedural bar."  531

U.S. at 9, 121 S.Ct. at 364.  Petitioner's motion for a belated appeal was "properly filed" as intended by § 2244(d)(2) even though it was without merit.

**Whether Petitioner is entitled to equitable tolling**

Since this § 2254 petition was timely filed, the court need not consider whether Petitioner is entitled to equitable tolling.

**Conclusion**

Accordingly, it is **RECOMMENDED** that Respondent's motion to dismiss, doc. 13, be **DENIED**, and that the court **ORDER** that within 60 days after the docketing of the order adopting this report and recommendation, Respondent shall file an answer on the merits, and that Petitioner shall be permitted to file a traverse 30 days after service of Respondent's answer.

**IN CHAMBERS** at Tallahassee, Florida, on September 10, 2007.


**s/    William C. Sherrill, Jr.**
**WILLIAM C. SHERRILL, JR.**
**UNITED STATES MAGISTRATE JUDGE**


**<u>NOTICE TO THE PARTIES</u>**

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 10 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**