**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**

**TREON D. PATRICK,**

      **Petitioner,**

**vs.**

                                     **CASE NO. 4:06cv543-SPM/WCS**

**WALTER A. McNEIL,[1]**

      **Respondent.**

_____/

## REPORT AND RECOMMENDATION

      This is a petition for writ of habeas corpus filed by Treon D. Patrick pursuant to

28 U.S.C. § 2254.  Doc. 1.  Petitioner challenges his convictions, as amended, for two

counts of lewd and lascivious molestation upon a child under the age of 12 years by a

person 18 years of age or older in violation of FLA. STAT. § 800.04(5)(b).  The

convictions are in the Circuit Court of the Second Judicial Circuit, in and for Jefferson

---

[1] Walter A. McNeil succeeded James McDonough as Secretary for the
Department of Corrections, and is automatically substituted as Respondent.  FED. R.
CIV. P. 25(d).

County, Florida, case number 01-7-CF.  Respondent filed an answer.  Doc. 22.

Petitioner filed a traverse.  Doc. 27.

Respondent initially filed a motion to dismiss, arguing that the petition was not

timely filed.  Doc. 13.  The court denied the motion.  Docs. 14 and 18.

The state court record consists of two filings of paper documents.  Exhibit A

through Exhibit T were filed with Respondent's motion to dismiss.  Doc. 13.  Exhibits U

through BB were filed with Respondent's answer.  Doc. 22.  These exhibits will be

referenced herein by letter.

**State Procedural History**

Petitioner was initially charged by information with two counts of sexual battery

on a child under 12 years of age by a person 18 years of age or older in violation of FLA.

STAT. § 794.011(2).  Ex. U.  The two counts charged capital felonies punishable in this

instance by a mandatory sentence of life in prison without parole.  *Id*.  The offenses

were alleged to have been committed between June, 2000, and January 1, 2001.  *Id*.

On June 11, 2001, Petitioner entered a plea of nolo contendere to the lesser included

offense of sexual battery by a person in custodial authority, and he was sentenced to

concurrent sentences of 15 years in prison.  Ex. A (online docket of state trial court).  He

was also designated a sexual predator.  *Id*.

Petitioner filed a Rule 3.850 motion on September 26, 2001.  Ex. B.  This motion

was denied without an evidentiary hearing.  Ex. C.  Petitioner appealed.  The First

District Court of Appeal affirmed the denial of grounds three, four, and six, but reversed

and remanded for an evidentiary hearing as to grounds one, two, and five.  Ex. E, p. 2;

Patrick v. State, 830 So.2d 248 (Fla. 1st DCA 2002).

The state circuit court appointed counsel for Petitioner and held an evidentiary hearing on grounds one, two, and five.  Ex. Z.  The court denied these grounds with a lengthy opinion.  Ex. F.  The court determined, however, that the judgment should be amended because the victim was younger than 12 years of age and the conviction for violation of FLA. STAT. § 794.011(8)(b) was improper because that statute does not apply when the victim is younger than 12 years of age .  *Id.*, p. 12.  The court amended the judgment to reflect convictions for lewd and lascivious molestation of a child under the age of 12 years by a person 18 years of age or older in violation of FLA. STAT. § 800.04(5)(b).  *Id.*  Both offenses, however, were first degree felonies.

Petitioner appealed but only raised three claims on appeal.  Ex. H.  The trial court's second denial of the Rule 3.850 motion was affirmed without opinion on July 15, 2004.  Ex. J.

As noted in the last report and recommendation, on March 27, 2005, Petitioner filed a motion for a belated appeal, even though he had already had an appeal.  Ex. L.  The appellate court found the motion to be insufficient, but gave leave to correct it.  Ex. M.  On April 24, 2005, Petitioner corrected the problem.  Ex. N.  The motion for a belated appeal was denied on the merits.  Ex. O.  Petitioner moved for rehearing, Ex. P, and the appellate court denied that on June 29, 2005.  Ex. Q.

**Section 2254 Standard of Review**

"Federal habeas relief is available to state prisoners only after they have exhausted their claims in state court.  28 U.S.C. §§ 2254(b)(1), (c)."  O'Sullivan v. Boerckel, 526 U.S. 838, 839, 119 S.Ct. 1728, 1730, 144 L.Ed.2d 1 (1999).  To properly exhaust remedies as required by § 2254(b), "the federal claim must be fairly presented

to the state courts." Picard v. Connor, 404 U.S. 270, 275, 92 S.Ct. 509, 512, 30 L.Ed.2d 438 (1971), Duncan v. Henry, 513 U.S. 364, 365, 115 S.Ct. 887, 888, 130 L.Ed.2d 865 (1995) (*citing* Picard).

If a claim was not fairly presented but is procedurally barred from further state court review,[2] Petitioner must demonstrate cause for the default and actual prejudice, *or* demonstrate that the constitutional violation has probably resulted in conviction of an innocent person. Coleman v. Thompson, 501 U.S. 722, 750, 111 S.Ct. 2565, 115 L.Ed.2d 640 (1991); McCleskey v. Zant, 499 U.S. 467, 494-95, 111 S.Ct. 1454, 1470-71, 113 L.Ed.2d 517 (1991).

For claims that were properly exhausted and adjudicated in state court, this court's review is limited. "[A] determination of a factual issue made by a State court shall be presumed to be correct," and Petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); Bui v. Haley, 321 F.3d 1304, 1322 (11th Cir. 2003) (citing the statute, footnote omitted). Moreover, as to a factual issue adjudicated by the state court, Petitioner must show that the adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." § 2254(d)(2); 321 F.3d at 1322 (citing the statute). Section 2254(d)(2) is satisfied "only if it is shown by clear and convincing evidence that the state court's

---

[2] Procedurally defaulted claims are considered technically exhausted because state court remedies no longer remain "available." The court therefore refers to "fairly presented" claims as having been *properly* exhausted, to distinguish them from claims exhausted by procedural default. *See* O'Sullivan, 526 U.S. at 848, 119 S.Ct. at 1734.

presumptively correct factual findings do not enjoy support in the record." Lomholt v. Iowa, 327 F.3d 748 , 752 (8th Cir. 2003) (citing § 2254(e)(1), other citation omitted).

As to legal findings, a petitioner is entitled to federal habeas relief only if the state court's adjudication of the merits of the federal claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." § 2254(d)(1). "[C]learly established Federal law, as determined by the Supreme Court of the United States," refers only to holdings (rather than *dicta*) of the Supreme Court, but decisions of lower federal courts may be considered to the extent that they demonstrate how those courts applied Supreme Court holdings. Hawkins v. Alabama, 318 F.3d 1302, 1309 (11th Cir. 2003) (citations omitted); Carey v. Musladin, 549 U.S. __, 127 S.Ct. 649, 653, 166 L.Ed.2d 482 (2006).

The "contrary to" and "unreasonable application" clauses of § 2254(d)(1) have independent meanings. Williams v. Taylor, 529 U.S. 362, 404-406, 120 S.Ct. 1495, 1519-1520, 146  L.Ed.2d 389 (2000); Bell v. Cone, 535 U.S. 685, 694, 122 S.Ct. 1843, 1850, 152 L.Ed.2d 914 (2002) (citing Williams).

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Williams v. Taylor, 529 U.S. at 412-413, 120 S.Ct. at 1523; 535 U.S. at 694, 122 S.Ct. at 1850.  *See also*, Panetti v. Quarterman, __ U.S. __, 127 S.Ct. 2842, 2858-2859, 168

L.Ed.2d 662 (2007) (discussing the unreasonable application standard) (citing Williams, other citations omitted).

"Avoiding these pitfalls [described in Williams v. Taylor] does not require citation of our cases – indeed, it does not even require *awareness* of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them."   Early v. Packer, 537 U.S. 3, 8, 123 S.Ct. 362, 365, 154 L.Ed.2d 263 (2002) (emphasis in original).  Further, "whether a state court's decision was unreasonable must be assessed in light of the record the court had before it."  Holland v. Jackson, 542 U.S. 649, 652, 124 S.Ct. 2736, 2738, 159  L.Ed.2d 683 (2004).

The basic law governing ineffective assistance of counsel claims was clearly established in Strickland v. Washington, 466 U.S. 668, 690, 694, 104 S.Ct. 2052, 2066, 2068, 80 L.Ed.2d 674 (1984).  Williams, 529 U.S. at 405-406, 120 S.Ct. at 1519-1520; Bell, 535 U.S. at 694-695, 122 S.Ct. at 1850.  Under the two part test of Strickland, Petitioner must demonstrate both deficient performance and prejudice to the outcome.

To establish deficient performance, a petitioner "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment."  466 U.S. at 690, 104 S.Ct. at 2066.  In reviewing the claim, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."  466 U.S. at 690, 104 S.Ct. at 2066.  "[B]ecause counsel's conduct is presumed reasonable, for a petitioner to show that the conduct was unreasonable, a petitioner must establish that no competent counsel would have taken the action that his counsel did take."  Chandler v. United States, 218 F.3d 1305, 1315 (11th Cir. 2000) (en banc), *cert. denied,* 531 U.S.

1204 (2001).  *See also* Fugate v. Head, 261 F.3d 1206, 1217 (11th Cir. 2001) (citing

Chandler).  There are no rigid requirements or absolute duty to investigate a particular

defense.  Fugate v. Head, 261 F.3d at 1217.

> Indeed, "[c]onsidering the realities of the courtroom, more is not always better.  Stacking defenses can hurt a case.  Good advocacy requires 'winnowing out' some arguments, witnesses, evidence, and so on, to stress others."

*Id.*

For prejudice, Petitioner must show "a reasonable probability that, but for

counsel's unprofessional errors, the result of the proceeding would have been different.

A reasonable probability is a probability sufficient to undermine confidence in the

outcome."  466 U.S. at 694, 104 S.Ct. at 2068.

In the context of a guilty plea, the first part of the Strickland test is the same, but

"in order to satisfy the 'prejudice' requirement, the defendant must show that there is a

reasonable probability that, but for counsel's errors, he would not have pleaded guilty

and would have insisted on going to trial."  Hill v. Lockhart, 474 U.S. 52, 59, 106 S.Ct.

366, 370, 88 L.Ed.2d 203 (1985); Gordon v. United States, 496 F.3d 1270, 1277 (11th

Cir. 2007), *quoting*, Hill.  The "prejudice" inquiry in the context of a guilty plea "will

closely resemble the inquiry engaged in by courts reviewing ineffective-assistance

challenges to convictions obtained through a trial."  Hill, 474 U.S. at 59, 106 S.Ct. at

370  In other words, the question of whether a defendant would have insisted upon

going to trial had attorney error not occurred with respect to the guilty plea will turn in

large part upon whether the defendant might reasonably have achieved a more

favorable outcome had he gone to trial.  United States v. Rosario, 902 F.2d 55, 58 (D.C.

Cir.), *cert. denied*, 498 U.S. 942 (1990).

> For example, where the alleged error of counsel is a failure to investigate
> or discover potentially exculpatory evidence, the determination whether
> the error "prejudiced" the defendant by causing him to plead guilty rather
> than go to trial will depend on the likelihood that discovery of the evidence
> would have led counsel to change his recommendation as to the plea.
> This assessment, in turn, will depend in large part on a prediction whether
> the evidence likely would have changed the outcome of a trial.  Similarly,
> where the alleged error of counsel is a failure to advise the defendant of a
> potential affirmative defense to the crime charged, the resolution of the
> "prejudice" inquiry will depend largely on whether the affirmative defense
> likely would have succeeded at trial.  *See, e.g., Evans v. Meyer*, 742 F.2d
> 371, 375 (CA7 1984) ("It is inconceivable to us . . . that [the defendant]
> would have gone to trial on a defense of intoxication, or that if he had
> done so he either would have been acquitted or, if convicted, would
> nevertheless have been given a shorter sentence than he actually
> received").

Hill, 474 U.S. at 59, 106 S.Ct. at 370-371.

Although Strickland explained the performance and prejudice prongs of analysis,

"there is no reason . . . to approach the inquiry in the same order or even to address

both components of the inquiry if the defendant makes an insufficient showing on one."

466 U.S. at 697, 104 S.Ct. at 2069.  "If it is easier to dispose of an ineffectiveness claim

on the ground of lack of sufficient prejudice, which we expect will often be so, that

course should be followed."  *Id.*

A state court's adjudication of an ineffective assistance claim does not satisfy the

"contrary to" language of § 2254(d)(1) even if this court might have applied Strickland

differently.  Williams, 529 U.S. at 406, 120 S.Ct. at 1520; Bell, 535 U.S. at 698, 122

S.Ct. at 1852.  To determine whether the state court's adjudication was an

"unreasonable application" of Strickland, Petitioner "must do more than show that he

would have satisfied *Strickland's* test if his claim were being analyzed in the first instance . . . .  Rather, he must show that the [state court] applied *Strickland* to the facts of his case in an objectively unreasonable manner."  <u>Bell</u>, 535 U.S. at 698-699, 122 S.Ct. at 1852 (*citing* <u>Williams</u>).  "[T]he most important point is that an *unreasonable* application of federal law is different from an *incorrect* application of federal law."  <u>Williams v. Taylor</u>, 529 U.S. at 410, 120 S.Ct. at 1522.

**Ground One**

Petitioner contends that his trial attorney was ineffective for failing to investigate the circumstances of his confession and for failing to move to suppress the confession. Doc. 1, p. 4, attached memorandum, p. 2; pp. 4 and 12 on the electronic docket.[3] Petitioner alleges that the police threatened to have his children taken away from him if he did not confess, and promised him immediate release on bond and a sentence of only one year in jail if he would give a statement.  *Id.*  He alleges he was not advised of his *Miranda* rights until after he had confessed.  *Id.*, memo, p. 3; p. 13.  Petitioner states that his attorney deposed the two officers who took his confession, Mike Norton and Frank Mosley, but did not file a motion to suppress.

---

[3] The page numbers assigned by the electronic docket are sequential, treating as one document a series of paper documents filed as one document.  The electronic page numbers, therefore, do not correspond to the page numbers assigned to the several paper documents.  The second page number here is to the electronic pagination.

Respondent contends that Petitioner did not exhaust state court remedies as to this claim because Petitioner did not raise the issue in his second appeal from denial of his Rule 3.850 motion after an evidentiary hearing.  Doc. 22, pp. 7-9.[4]

The state circuit court initially denied this claim, finding that it should have been raised on direct appeal.  Ex. C, p. 1.  The appellate court reversed, finding that an ineffective assistance of counsel claim is properly raised by a Rule 3.850 motion.  Ex. E, p. 5.  The trial court on remand appointed counsel for Petitioner and conducted an evidentiary hearing.  Ex. Z, p. 1.  In a second order, the trial court again denied this claim after lengthy factual analysis.  Ex. F, pp. 1-4.

Petitioner's appointed counsel filed an appeal, presenting three issues, but he did not raise this claim on appeal.  Ex. H (brief on appeal).  The only ineffectiveness claim presented on this appeal was claim two, that Petitioner's trial counsel was ineffective for failing to interview the victim's babysitter and younger brother.  *Id.*, p. 9.  It was contended that had he done so, he would have learned that the victim told "witnesses" that "she had lied about sexual activity" with Petitioner.  *Id.*

Respondent is correct, therefore, that Petitioner did not exhaust state court remedies as to Ground One.  The "one complete round" exhaustion requirement set forth in O'Sullivan v. Boerckel, *supra*, applies to post-conviction review as well, and a prisoner must appeal the denial of post-conviction relief in order to properly exhaust state remedies.  LeCroy v. Secretary, Florida Dept. of Corrections, 421 F.3d 1237, 1261 (11th Cir. 2005) (as Florida prisoner failed to properly exhaust claim on direct appeal or

---

[4] The electronic page numbers for document 22 are the same as the page numbers of the paper document.

Rule 3.850 appeal, it was procedurally barred, citing <u>Coleman</u>); <u>Pope v. Rich</u>, 358 F.3d 852, 854 (11th Cir. 2004) ("<u>Boerckel</u> applies to the state collateral review process as well as the direct appeal process"); <u>Pruitt v. Jones</u>, 348 F.3d 1355, 1359 (11th Cir. 2003); <u>Leonard v. Wainwright</u>, 601 F.2d 807, 808 (5th Cir. 1979)[5] (Florida prisoner must appeal denial of Fla.R.Crim.P. 3.850 relief to exhaust remedies); <u>White v. Godinez</u>, 192 F.3d 607 (7th Cir.1998), *cert denied*, 120 S.Ct. 1004 (2000) (finding no "appreciable difference between direct appeals and post-conviction appeals in this regard," holding <u>Boerckel</u> requires appeal following collateral review).  This court cannot reach the merits unless Petitioner shows cause for the procedural default and prejudice.

In an effort to show cause, Petitioner argues that "[a]ny burden for failure to brief claim on appeal after remand is born by Respondents (State) as during those proceedings Petitioner was at [the] mercy of government appointed Counsel, and could not submit pro se pleadings."  Doc. 27, p. 4 (the page numbers on the paper document and the electronic document are the same).  The appeal at issue was from the denial of Rule 3.850 relief.  An error by counsel in state post-conviction proceedings, however, cannot constitute "cause" for the default since there is no right to counsel in post-conviction proceedings.  <u>Keeney v. Tamayo-Reyes</u>, 504 U.S. 1, 112 S.Ct. 1715, 1720, n. 5, 118 L.Ed.2d 318 (1992); <u>Coleman v. Thompson</u>, 501 U.S. 722, 111 S.Ct. 2546, 2566, 115 l.Ed.2d 640 (1991); <u>Murray v. Giarratano</u>, 492 U.S. 1, 109 S.Ct. 2765, 2771, 106 L.Ed.2d 1 (1989); <u>Wainwright v. Torna</u>, 455 U.S. 586, 102 S.Ct. 1300, 71 L.Ed.2d

---

[5] The Eleventh Circuit adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.  <u>Bonner v. City of Prichard</u>, 661 F.2d 1206, 1209 (11th Cir. 1981).

475 (1982); <u>Toles v. Jones</u>, 888 F.2d 95, 99-100 (11th Cir. 1989) and cases cited.

Therefore, this court cannot reach the merits of Ground One.

**Ground Two**

Petitioner contends that his attorney was ineffective with respect to advice given regarding his plea.  He asserts that he thought that he was pleading to a second degree felony of lewd and lascivious conduct, with a maximum sentence of 15 years, but his lawyer misled him and he entered a plea to a first degree felony with a maximum sentence of 30 years.  Doc. 1, p. 4  He also argues that his attorney failed to inform him that he would be designated as a sexual predator or would be subjected to post-sentence civil commitment proceedings under the Jimmy Ryce Act.  *Id.*

Respondent correctly contends that state court remedies were not exhausted as to this claim because Petitioner failed to present this ineffectiveness claim in his second appeal from denial of Rule 3.850 relief.  Doc. 22, p. 9.  Petitioner's appointed counsel filed a second appeal presenting three issues, but he did not raise this claim on appeal. Ex. H (brief on appeal).  Petitioner faults his post-conviction attorney for not raising the claim on appeal, but that is not cause for the default as explained above.  This court, therefore, cannot reach the merits of Ground Two.

**Ground Three**

This claim involves the same issues as Ground Two, but Respondent concedes that state court remedies were exhausted as to this claim.  Doc. 22, p. 11.  It was presented as claim three of the Rule 3.850 motion, denied without an evidentiary hearing, and the denial was summarily affirmed in the first appeal.

In Ground Three, Petitioner contends that after sentencing, he asked his attorney to file a motion to allow him to withdraw his plea.  Doc. 1, p. 5.  He asserts that he told his lawyer that prior to the plea he did not understand that he would be designated a sexual predator, would have a ten year term of probation as a sexual offender, or that he was subject to possible civil commitment pursuant to the Jimmy Ryce Act.  *Id.*  He contends his attorney was ineffective for failing to file a motion to withdraw the plea.  *Id.*

In his memorandum, Petitioner asserts that his attorney told him that if he were to have his plea withdrawn, he would be sentenced to life imprisonment.  Doc. 22, memo, p. 10; doc. 1, p. 20 on the electronic docket.  He asserts that his lawyer also affirmatively mislead him by telling him that the civil sanctions did not apply to him and hung up the telephone.  *Id.*  He asserts that because his attorney did not file a motion to withdraw the plea, the appellate court had no jurisdiction to review the voluntariness of the plea.  *Id.*, p. 11; p. 21.  Petitioner asserts that as another consequence of the failure to file a motion to withdraw the plea, there was no meaningful appellate review of his contention that he thought he was entering a plea to a lewd and lascivious act, a second degree felony, not to sexual battery, and that he was mislead by counsel into signing a blank plea form.  *Id.*

The trial court denied this claim in its first order.  As to ground three (and also two and four) in the Rule 3.850 motion, the court reasoned:

> The record conclusively establishes that the plea was in fact voluntary, the sentence legally favorable to the defendant and that he was fully informed of the nature and consequences of entering his plea.  Defendant cannot now claim that counsel was ineffective by securing a result more favorable than what the defendant could legally expect other than through a negotiated plea.

The defendant's failure to allege any facts to establish any impropriety on the part of counsel defeats this claim.  Strickland v. Washington, 466 U.S. 668, 687 (1984).

                    *                    *                    *

Therefore from all of the above, the Court finds that the alleged allegations of ineffective assistance of counsel are wholly and conclusively refuted by the record such that an evidentiary hearing is not necessary.

Ex. C, p. 2.

Since there has been no evidentiary hearing, it will be assumed to be true that

Petitioner's lawyer told him that he would be sentenced to life imprisonment if he

withdrew his guilty plea.  Petitioner faced a mandatory life sentence without parole if

convicted as charged.  FLA. STAT. §§ 794.011(2)(a) and 775.082(1).

Petitioner's attorney must have thought that conviction of the capital felony was a

significant possibility.  To show ineffective assistance of counsel, Petitioner must show

significant attorney error as to this assessment of Petitioner's chances had he gone to

trial.

To establish that counsel's performance was deficient, a petitioner must meet a high burden.  "There is a strong presumption that counsel's performance was reasonable and adequate."  *Michael [v. Crosby*, 430 F.3d 1310 (11th Cir. 2005], 430 F.3d at 1320.  To overcome that presumption, "a petitioner must establish that no competent counsel would have taken the action that his counsel did take."  *Chandler v. United States*, 218 F.3d 1305, 1315 (11th Cir. 2000) (*en banc*).  Because this standard is objective, *id.* at 1315 n. 15, it matters not whether the challenged actions of counsel were the product of a deliberate strategy or mere oversight.  *The relevant question is not what actually motivated counsel, but what reasonably could have motivated counsel.  See Roe v. Flores-Ortega*, 528 U.S. 470, 481, 120 S.Ct. 1029, 1037, 145 L.Ed.2d 985 (2000) ("The relevant question is not whether counsel's choices were strategic, but whether they were reasonable."); *Darden v. Wainwright*, 477 U.S. 168, 186, 106 S.Ct. 2464, 2474, 91 L.Ed.2d 144 (1986) (rejecting a claim of ineffective assistance because "there are several reasons why counsel reasonably could have chosen to rely on a simple plea for mercy

from petitioner himself").  "Even if many reasonable lawyers would not have done as defense counsel did at trial, no relief can be granted on ineffectiveness grounds unless it is shown that no reasonable lawyer, in the circumstances, would have done so."  *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994).

*When we can conceive of a reasonable motivation for counsel's actions, we will deny a claim of ineffective assistance without an evidentiary hearing*. . . .

Gordon v. United States, __ F.3d __, 2008 WL 614189, *9 (11th Cir. Mar. 7, 2008) (No. 05-16703) (emphasis added).

Petitioner's attorney had a reasonable motivation to warn Petitioner that if he went to trial, he would be convicted and sentenced to life in prison without parole.  The child had voluntarily reported that Petitioner was having sex with her.  Ex. X (transcript of Rule 3.850 hearing), R. 136-137.[6]  As will be discussed ahead with respect to Ground Four, Petitioner did not have any exculpatory witnesses.  Moreover, Petitioner confessed.  The trial court held a lengthy evidentiary hearing on the Rule 3.850 motion and found that the confession was voluntary and without defect.  Ex. E, pp. 2-4.  The officers testified that Petitioner was given *Miranda* warnings twice and interviewed by the police, first unrecorded and then with an audio recording.  Ex. X, R. 137-140.  Petitioner confessed to being "involved in this incident."  *Id.*, R. 151.  At the end of the interview, Petitioner said that "he was wrong at what he had done, he needed help and asked us [the officers] to speak to the attorney in regarding him getting help."  *Id.*, R. 142.  An audio tape was taken of the confession, and a transcript was prepared.  *Id.*, R. 151.  Petitioner has come forward with no evidence to the contrary.  In summary, it

---

[6] This document has record numbers printed in the lower right corner and those will be used instead of the page of the transcript.

seems reasonably probable that had Petitioner gone to trial, he would have been

convicted as charged and sentenced to life in prison without parole.

The claims concerning confusion about designation as a sexual predator, 10

years of probation, and the possibility of being subjected to the Jimmy Ryce Act, are

contradicted by the record from the plea colloquy.  In a challenge to a guilty plea by

post-conviction motion:

> [T]he representations of the defendant, his lawyer, and the prosecutor at
> [the plea] hearing, as well as any findings made by the judge accepting
> the plea, constitute a formidable barrier in any subsequent collateral
> proceedings.  Solemn declarations in open court carry a strong
> presumption of verity.  The subsequent presentation of conclusory
> allegations unsupported by specifics is subject to summary dismissal, as
> are contentions that in the face of the record are wholly incredible.

Blackledge v. Allison, 431 U.S. 63, 73-74, 97 S.Ct. 1621, 1629, 52 L.Ed.2d 136 (1977)

(citations omitted); see also United States v. Gonzalez-Mercado, 808 F.2d 796, 799-800

and n. 8 (11th Cir. 1987) (while not insurmountable, there is a strong presumption that

statements made during a plea colloquy are true, citing Blackledge and other cases).

At the outset of the plea colloquy, Petitioner's attorney said that the agreement

with the State was that Petitioner would enter no contest pleas to reduced charges of

sexual battery by a person of custodial authority, a first degree felony, and would be

sentenced to 15 years in prison followed by 10 years of sex offender probation.  Ex. X,

R. 114.  Petitioner was informed by the prosecutor that he qualified as a sexual predator

and would have to register, and he had to submit to DNA testing.  Id., R. 118-119.  The

prosecutor asked the court to inquire if Petitioner's lawyer had told him he "may be

subject to the Jimmy Ryce Act."  Id., R. 118.  The court then told Petitioner that he

needed "to find out exactly what are your registration requirements and how often does

that have to be done.  *Id.*, R. 119-120.  The court asked Petitioner if his lawyer had talked to him about the Jimmy Ryce Act, and Petitioner said "Yes, Sir."  *Id.*, R. 120.

The trial court's finding that Petitioner was fully informed of the consequences of his plea is supported by the record.  Petitioner has not shown by clear and convincing evidence that those factual findings are erroneous.  For these reasons, Petitioner has not shown that the state court's adjudication of the merits of this federal claim has "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  § 2254(d)(1).

**Ground Four**

The gist of Ground Four is that Petitioner's trial attorney was ineffective in the investigation of favorable witnesses.  Petitioner asserts that "the victim's babysitter, Lisa Morris, and the victim's brother Antwon Young, . . . would have testified that the victim said [Petitioner] never made improper sexual contact with her, but that she had lied about him."  Doc. 1, memo, p. 13; p. 23 on the electronic docket.  Petitioner said he discovered from his wife what Morris might have said.  *Id.*  Petitioner alleges he would have insisted upon going to trial had the exculpatory witnesses been discovered.  *Id.*  Respondent concedes exhaustion of state court remedies (as ground five of the Rule 3.850 motion) and addresses the merits.  Doc. 22, p. 15.

The trial court conducted a lengthy Rule 3.850 evidentiary hearing and rejected this claim.  The court characterized the claim as dependent upon hearsay stacked upon hearsay:

> Patrick claims to have been told by his mother, Lillie Mae Odom, that she
> had been told by defendant's wife, Lawanda Barrington, that she had been
> told by the babysitter, Lisa Morris, that she had heard the victim's 10 year
> old brother, Antwon, state to the victim during an argument, that he was
> going to tell the truth about the victim's having lied about something having
> happened.

Ex. F, p. 10.  The court noted that Petitioner had been in jail, and he could not have

talked to the witnesses.  *Id.*  The court then noted:

> At the evidentiary hearing, the defendant testified and his mother testified.
> No testimony was presented from Antwon, who allegedly made the
> statement overheard by the babysitter, nor was any testimony produced
> from the babysitter, Lisa Morris, who allegedly overheard such a
> statement and reported it to defendant's wife, Lawanda Barrington, nor
> was Lawanda Barrington called as a witness to the evidentiary hearing.

*Id.*  The court also found that Petitioner never testified at the Rule 3.850 hearing that

"nothing ever happened," and he testified "that he merely told his lawyer that he had

heard from his wife and his mother that Antwon and Lisa may have information that

would be helpful to his defense."  *Id.*, p. 11.  The court further found that Petitioner's

lawyer testified at the hearing that while he had been told that Antwon and Lisa Morris

"might have some useful information,"

> he did not conduct any further investigation of those individuals because
> Antwon had already given a statement that he had personally witnessed
> some sexual contact between the defendant and his step daughter, and
> [counsel] had already conducted a[] complete investigation concerning
> defendant's confession, and had concluded that there was no basis to
> disbelieve the statement by the defendant during such confession.

*Id.*  With these findings, the trial court found this claim to be without merit.  *Id.*, p. 12.

This ruling is plainly correct on this record.  There still is no competent evidence that the 10 year old boy, Antwon, would have given any favorable evidence.[7] Petitioner's conclusory allegations about the testimony of uncalled witnesses are insufficient to state a claim of ineffective assistance of counsel.  *See* Aldrich v. Wainwright, 777 F.2d 630, 636-37 (11th Cir.1985), *cert. denied*, 479 U.S. 918 (1986); Bolder v. Armontrout, 921 F.2d 1359, 1363-1364 (8th Cir.1990), *cert. denied*, 502 U.S. 850 (1991); United States v. Vargas, 920 F.2d 167, 169-170 (2d Cir.1990), *cert. denied*, 502 U.S. 826 (1991).  Therefore, Petitioner has not shown that the state court's adjudication of the merits of this federal claim has "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  § 2254(d)(1).

**Ground Five**

Petitioner claims that his appellate counsel was ineffective with respect to his appeal from denial of his Rule 3.850 motion.  Doc. 1, p. 6.  He contends that his attorney failed to file briefs on appeal.  *Id.*  This prompted Petitioner's motion for a belated appeal discussed above and in the first report and recommendation.  *Id.*

This claim makes little sense.  Petitioner did not have a lawyer when he filed his first *pro se* appeal from denial of his Rule 3.850 motion.  Ex. D.  As discussed above, when the matter was remanded, counsel was appointed for Petitioner and that attorney filed a brief on appeal from the denial of the Rule 3.850 motion.  Ex. H.

---

[7] Further, as Petitioner failed to develop the facts to support this claim in the state court proceedings, he would have to meet the "stringent requirements" of § 2254(d)(2) before he would be entitled to an evidentiary hearing in this court.  *See* Williams v. Taylor, 529 U.S. at 438, 120 S.Ct. at 1491 (discussing the statute).

In any event, Petitioner had no Sixth Amendment right to counsel to pursue his Rule 3.850 motion.  Consequently, he cannot have a claim of ineffectiveness of that counsel.  See the cases cited above, pages 11-12.  Moreover, § 2254 expressly provides that ineffectiveness of counsel in collateral post-conviction proceedings is not a basis for § 2254 relief. § 2254(i).  Ground Five affords no relief.

**Ground Six**

Petitioner contends his sentence is unconstitutional due to defects in Florida's Criminal Punishment Code, Fla. Stat. § 921.002, causing a denial of due process. Doc. 1, p. 8.  He contends that the Criminal Punishment Code (CPC) grants the State the right to appeal a downward departure of sentence, but since the CPC maximum is the statutory maximum, no upward departure exists and hence a defendant cannot appeal an upward departure.  *Id.*  Petitioner also argues that sentences are "grossly disproportionate" because at the high end is the statutory maximum and at the low end is a guidelines sentence, causing cruel and unusual punishment.  *Id.*  Petitioner claims that these factual allegations deny equal protection of the law and procedural due process (right to appeal), substantive due process, and violate the Double Jeopardy Clause and the Eighth Amendment.  *Id.*

Relevant to this claim, the CPC provides in part that:

**921.002. The Criminal Punishment Code**

The Criminal Punishment Code shall apply to all felony offenses, except capital felonies, committed on or after October 1, 1998.

(1) . . .  The Criminal Punishment Code embodies the principles that:

*             *             *

(f) Departures below the lowest permissible sentence established by the code must be articulated in writing by the trial court judge and made only when circumstances or factors reasonably justify the mitigation of the sentence. The level of proof necessary to establish facts that support a departure from the lowest permissible sentence is a preponderance of the evidence.

(g) The trial court judge may impose a sentence up to and including the statutory maximum for any offense, including an offense that is before the court due to a violation of probation or community control.

(h) A sentence may be appealed on the basis that it departs from the Criminal Punishment Code only if the sentence is below the lowest permissible sentence or as enumerated in s. 924.06(1).

*               *               *

This claim was presented to the state court by means of a Rule 3.800 motion to correct an illegal sentence. Doc. 22, p. 22, citing Ex. R. Respondent argues that the only claims presented in the Rule 3.800 motion were the double jeopardy and equal protection claims. *Id.* Respondent contends the other claims were based upon state law and, therefore, the federal claims were not fairly presented. *Id.*

Petitioner presented a claim of a right to appeal and denial of equal protection. Ex. R, pp. 2-5. The equal protection claim was that the CPC had unfairly permitted the State to appeal, but denied the right to appeal to the defendant. *Id.*, p. 3. The "right to appeal" claim presented in the Rule 3.800 motion was based entirely upon state law, however. Petitioner cited <u>State v. Jefferson</u>, 758 So. 2d 661 (Fla. 2000). Ex. R, p. 2. Petitioner argued that the CPC violated the Florida Constitution with respect to the right to appeal a criminal judgment. *Id.*, p. 3. <u>Jefferson</u> did not cite federal law, and relied entirely upon FLA. CONST. ART. 5, § 4(b). 758 So. 2d at 664.

Petitioner also presented a federal double jeopardy claim in his Rule 3.800 motion. *Id.*, pp. 5-6.

The remainder of Respondent's exhaustion argument is incorrect. Petitioner presented a federal procedural due process claim, arguing that uniform sentencing was provided at the low end of sentences, but that at the high end, uniformity was not achieved, especially with respect to consecutive sentences. *Id.*, pp. 7-8. Petitioner presented a federal substantive due process claim as well, citing Lasky v. State Farm Insurance Co., 296 So. 2d 9, 15 (Fla. 1974). *Id.*, p. 9. That case relied in part upon Fourteenth Amendment due process. *Id.* Finally, Petitioner presented a federal Eighth Amendment claim. Ex. R, p. 10. He argued that the CPC encourages sentences that are grossly out of proportion to the severity of the conduct. *Id.*, pp. 10-11.

In summary, the only CPC claim not presented to the state court was a federal constitutional right to appeal a criminal sentence. All of the other claims in Ground Six were fairly presented to the state court.

Respondent argues that while the state court did not base its ruling on standing, Petitioner lacks standing to challenge the constitutionality of the Criminal Punishment Code. Doc. 22, p. 23. "Standing and ripeness present the threshold jurisdictional question of whether a court may consider the merits of a dispute." Elend v. Basham, 471 F.3d 1199, 1204 (11th Cir. 2006) (citation omitted). "Both standing and ripeness originate from the Constitution's Article III requirement that the jurisdiction of the federal courts be limited to actual cases and controversies." *Id.*, at 1204-1205 (citation omitted). "It is by now axiomatic that standing requires the plaintiff to demonstrate injury in fact, causation, and redressability." *Id.*, at 1205 (citation omitted).

> The constitutional requirements of standing are that "[1] the plaintiff must have suffered an 'injury in fact' . . . . [2] there must be a causal connection between the injury and the conduct complained of . . . . and [3] it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.' "  The plaintiff bears the burden of establishing each of these elements.

*Id.*, at 1206 (citations omitted).  Since standing is jurisdictional, it must be considered by the court *sua sponte*.  AT&T Mobility, LLC v. National Ass'n for Stock Car Auto Racing, Inc., 494 F.3d 1356, 1360 (11th Cir. 2007).  Thus, it is immaterial that the state court did not rule upon the standing question.  This court must do so *sua sponte*.

Petitioner here faced a mandatory life sentence without parole if convicted as originally charged.  The CPC did not increase the maximum sentence to which he was exposed.  Petitioner then negotiated a plea agreement to two counts of sexual battery upon a person in familial custody in violation of FLA. STAT. § 794.011(8)(b), a first degree felony.  Ex. V.  For each count he faced a maximum prison sentence of 30 years, or a total maximum of 60 years had consecutive sentences been imposed.  *Id.* and FLA. STAT. § 775.082(3)(b).  The CPC scoresheet provided a 16.875 year prison sentence as the lowest permissible prison sentence.  Ex. W, p. 2.  Pursuant to the plea agreement, Petitioner was sentenced to 15 years in prison, below the minimum sentence provided by the CPC.  Since Petitioner was not injured by the CPC, he has no standing to challenge that statute.[8]  This court lacks jurisdiction to reach the merits of Ground Six.

---

[8] Respondent cites Owens v. McDonough, 2007 WL 4370481 (N.D. Fla. Dec. 10, 2007) (No. 4:06cv343-MP/WCS).  Ex. BB.  The defendant there was injured by the CPC and had *standing* because his maximum sentence increased from 5 years to life, his minimum sentence increased from no prison to 311.25 months, and he was sentenced to 311.25 months, all due to the CPC.

**Conclusion**

Accordingly, it is **RECOMMENDED** that 28 U.S.C. § 2254 petition for writ of habeas corpus filed by Treon D. Patrick challenging convictions, as amended, for two counts of lewd and lascivious molestation upon a child under the age of 12 years by a person 18 years of age or older in violation of FLA. STAT. § 800.04(5)(b) in the Circuit Court of the Second Judicial Circuit, in and for Jefferson County, Florida, case number 01-7-CF, be **DENIED WITH PREJUDICE**.

**IN CHAMBERS** at Tallahassee, Florida, on April 9, 2008.

s/     William C. Sherrill, Jr.
**WILLIAM C. SHERRILL, JR.**
**UNITED STATES MAGISTRATE JUDGE**

**<u>NOTICE TO THE PARTIES</u>**

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 10 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**